528 S.E.2d 207

**STATE of West Virginia ex rel. Roy David VERNATTER, Petitioner Below, Appellant,**

v.

**WARDEN, WEST VIRGINIA PENITENTIARY, Respondent Below, Appellee.**

No. 25952.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 2, 1999.

Decided Dec. 16, 1999.

D.C. Offutt, Jr., Esq., Dianne D. Einstein, Esq., Huntington, West Virginia, Attorney for Appellant.

Darrell V. McGraw, Jr., Attorney General, Barbara Allen, Managing Deputy Attorney General, Charleston, West Virginia, Attorney for Appellee.

McGRAW, Justice:

Appellant Roy David Vernatter appeals the circuit court's refusal to grant him habeas corpus relief on his claim of ineffective assistance of counsel, where his primary allegation was that trial counsel were ineffective in failing to have arranged for him to undergo a psychiatric examination prior to his pleading guilty to first-degree murder. We affirm the judgment of the lower court, concluding that there is sufficient evidence in the record supporting the court's finding that counsel undertook reasonable investigation of possible mental defenses prior to counseling Vernatter to plead guilty to the charged offense.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Vernatter was charged with murder in connection with the shooting death of his mother's boyfriend, Lomie Vance. Evidence adduced at the preliminary hearing indicated that on March 16, 1992, Vernatter and Vance had a physical altercation inside the home of Vernatter's mother. Both men were intoxicated. Vance went outside following the fight, and Vernatter, according to the testimony of his sister, went upstairs and procured a shotgun, expressing his intent to kill Vance. Vernatter subsequently went outside and, after Vance asked him to put the gun down, shot the victim in the face. Vance was killed instantly.

Shortly after Vernatter's arrest on March 22, 1992, Timothy Koontz and John Sims

were appointed as defense counsel. Counsel later negotiated an agreement requiring Vernatter to plead guilty to first-degree murder, in exchange for a sentence permitting him to become eligible for parole after ten years. The plea agreement was accepted by the circuit court on May 3, 1993.

Vernatter subsequently initiated the present action for habeas relief on May 16, 1994, alleging that counsel were ineffective in, among other things, failing to obtain a psychiatric evaluation in light of what he alleged was a long history of mental disability.

According to evidence presented at the evidentiary hearing, counsel obtained Vernatter's mental health records from Huntington State Hospital shortly after his arrest. These records indicate that Vernatter was admitted to that facility at least three times between 1987 to 1991 for alcohol-related problems. They also relate Vernatter's self-chronicled twenty-year history of alcohol and substance abuse, as well as a similarly lengthy record of antisocial conduct involving, among other things, automobile theft and breaking and entering offenses. Significantly, during a May 1991 admission to Huntington State Hospital, the examining psychologist reported that Vernatter had "no symptoms ... to suggest psychosis or significant affective disorder," and that "no neuropsychopathology is suspected at this time." Instead, he was diagnosed as suffering from alcoholism and antisocial personality disorder.

Counsel also obtained records from Logan–Mingo Area Mental Health, Inc. ("Logan–Mingo"), to which Vernatter was referred for treatment following various stays at Huntington State Hospital. These records similarly relate his long history of alcoholism, as well as a proclivity toward violence when drinking. Vernatter's lawyers also had access to records pertaining to a January 1991 psychological assessment conducted fol-

lowing his commitment to Weston Hospital. The assessment was apparently ordered in response to an incident that occurred on January 5, 1991, where Vernatter allegedly placed a loaded gun to his mother's face and threatened to kill her, and where he struck his girlfriend and a three-year-old child. He was reported as stating that he had no recall of such events, in that he had suffered a "blackout." The Weston Hospital records contain an observation stating that Vernatter "has good awareness of alcohol problem," and they relate his statement that "he has quit a million times but is going to get help this time." The report diagnosed Vernatter as suffering from alcohol dependence, and observed: "Progress notes relate no signs of psychosis and none are observed at this time."

Vernatter's trial was originally scheduled for August 1992; however, trial counsel moved for a continuance to permit a psychiatric evaluation for purposes of determining the defendant's mental responsibility at the time of the charged offense, as well as to determine his competency to stand trial. The circuit court subsequently entered an order on August 26, 1992, continuing the trial and ordering that Vernatter undergo a psychiatric evaluation. Defense counsel later presented a second motion for a psychiatric evaluation in December 1992, which was also granted by the circuit court.[1] It is undisputed that Vernatter never underwent the ordered evaluation prior to entry of his guilty plea in May 1993.[2]

At the evidentiary hearing, both Koontz and Sims testified that their primary purpose in seeking a court order for a mental examination of Vernatter was to ensure that they would be reimbursed for expenses related to the evaluation. Koontz noted that while he always requested such authorization in homicide cases, it was intended merely to give him the "option" of later having an evaluation

---

1. Counsel explained that the second order was procured out of concerns that the first might not be sufficient in order for them to obtain reimbursement for the possible expense of the examination.

2. Vernatter underwent a psychological evaluation in November 1993, after he was placed in the custody of the West Virginia Division of Cor-

rections. The examining psychologist concluded that he was "mildly impaired," and noted that "[h]is presentation hinted of a schizotypal personality disorder." Vernatter presented no other evidence in habeas proceedings below establishing that he suffers from any impairment other than alcoholism.

performed where necessary. Both lawyers explained that they divided their work, with Koontz taking charge of reviewing Vernatter's mental health records and arranging for an examination.

Koontz further testified that after reviewing the records in question, he provided copies to Dr. Steven Corder, a Charleston psychiatrist, and subsequently had discussions with Dr. Corder in April 1993 regarding the possibility of presenting a mental defense at trial. Koontz stated that Dr. Corder "was not very helpful in what he thought the psychiatric examination would reveal." He went on to explain that he was hesitant to pursue the psychiatric evaluation because he did not think that the prosecution was in possession of Vernatter's mental health records and that, from a strategic standpoint, it would be prudent not to draw attention to these materials because they could potentially be used for impeachment purposes.

Both Koontz and Sims also testified that while following his arrest Vernatter was telling his mental health counselor at Logan–Mingo that he had no recollection of shooting Lomie Vance, he was nevertheless telling his lawyers that he had total recall of the events in question. (Vernatter denied having disclosed any such recollection of the shooting.) As Koontz stated at one point:

> I felt that he was embellishing and that he was exaggerating and that he had concocted this story, and that it was a roadmap for disaster at trial. . . . I recall very well telling him that I didn't feel he would benefit from psychological evidence at trial, and that this information [the mental health records] could have been subpoenaed by the State and used against him.

With respect to his advice regarding the advisability of pursuing a mental defense, Koontz testified that he discussed the medical records with Vernatter and told him that they "hurt him more than they helped him." He further explained that the mental health records he had reviewed merely indicated that his client suffered from alcoholism and an antisocial personality disorder, and that in his practical experience as a lawyer he had "never found that alcoholism was an excuse ever bought by the jury."

The circuit court denied habeas corpus relief by an order entered June 26, 1998, finding as follows:

> [C]ounsel discussed [their] client's mental health history with him; obtained significant portions of his mental health records; scheduled psychiatric evaluations, but abandoned that course after reviewing the records and discussing the evaluation with a psychiatrist. The Court finds that counsel did take reasonable steps to investigate whether an insanity or diminished capacity defense could be raised. In addition, the Court further finds that the petitioner has failed to prove that there is a reasonable probability that the outcome of his case would have been different even if counsel had proceeded with the psychiatric evaluation.

The circuit court also found as a matter of fact that Vernatter had told his attorneys that he remembered the course of events on the night of the shooting, concluding that "trial counsel could not perpetrate a fraud upon the Court in assisting the petitioner in offering false testimony, if he elected to testify or indirectly presenting a defense based upon false representations made to law enforcement and mental health professionals."

## II.

### STANDARD OF REVIEW

As we stated in *State ex rel. Daniel v. Legursky,* 195 W.Va. 314, 465 S.E.2d 416 (1995), "[a]n ineffective assistance of counsel claim presents a mixed question of law and fact; we review the circuit court's findings of historical fact for clear error and its legal conclusions *de novo.* This means that we review the ultimate legal claim of ineffective assistance of counsel *de novo* and the circuit court's findings of underlying predicate facts more deferentially." *Id.* at 320, 465 S.E.2d at 422; *see also* syl. pt. 1, *State ex rel. Postelwaite v. Bechtold,* 158 W.Va. 479, 212 S.E.2d 69 (1975) ("Findings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings

are clearly wrong."), *cert. denied,* 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976).

## III.

## DISCUSSION

### A.

### *Ineffective Assistance of Counsel*

Vernatter's primary contention is that by not obtaining a psychiatric examination, trial counsel were ineffective in failing to develop and provide him with competent advice concerning possible mental defenses (*i.e.,* insanity or diminished capacity) prior to his entry of a guilty plea.

■■■ Claims of ineffective assistance of counsel are governed by the two-prong test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and subsequently adopted by this Court in *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995). In syllabus point 5 of *Miller,* we stated:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-prong test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Failure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim. *State ex rel. Daniel v. Legursky,* 195 W.Va. 314, 321, 465 S.E.2d 416, 423 (1995).

■■■ The first prong of this test requires that a petitioner "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court then must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. The petitioner's burden in this regard is heavy, as there is a "strong pre-

sumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Id.* at 689, 104 S.Ct. at 2065. In syllabus point 6 of *Miller,* we further explained that:

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

■■■ The *Strickland* Court pointed out that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. This Court has likewise emphasized that counsel's strategic decisions must rest upon reasonable investigation:

> The fulcrum for any ineffective assistance of counsel claim is the adequacy of counsel's investigation. Although there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and judicial scrutiny of counsel's performance must be highly deferential, counsel must at a minimum conduct a reasonable investigation enabling him or her to make informed decisions about how best to represent criminal clients. Thus, the presumption is simply inappropriate if counsel's strategic decisions are made after an inadequate investigation.

Syl. pt. 3, *State ex rel. Daniel v. Legursky.* "Courts applying the *Strickland* standard have found no difficulty finding ineffective assistance of counsel where an attorney neither conducted a reasonable investigation,

nor demonstrated a strategic reason for failing to do so." *Daniel,* 195 W.Va. at 320, 465 S.E.2d at 422 (citation omitted).

The second or "prejudice" requirement of the *Strickland/Miller* test looks to whether counsel's deficient performance adversely effected the outcome in a given case. A modified prejudice standard applies in cases where a conviction rests upon a plea of guilty. In this circumstances the prejudice element "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Under *Hill,* " '[p]rejudice' is a reasonable probability that the defendant would have insisted on going to trial had he not received the ineffective assistance, and a 'reasonable probability' is 'a probability sufficient to undermine confidence in the outcome.' " *Ostrander v. Green,* 46 F.3d 347, 355 (4th Cir.1995) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068), overruled on other grounds by *O'Dell v. Netherland,* 95 F.3d 1214 (4th Cir.1996). While *Hill's* prejudice requirement focuses on a subjective question, "the answer to that question must be reached through an objective analysis." *Hooper v. Garraghty,* 845 F.2d 471, 475 (4th Cir.), *cert. denied,* 488 U.S. 843, 109 S.Ct. 117, 102 L.Ed.2d 91 (1988).

In this case, we find no error in the circuit court's conclusion that the conduct of Vernatter's trial counsel fell within the range of competent representation. Counsel are under an obligation to undertake reasonable pre-trial investigation of possible mental defenses where there are indications that a defendant suffers from a significant mental defect. *See United States v. Kauffman,* 109 F.3d 186, 190 (3rd Cir.1997) (finding ineffec-

tive assistance of counsel where counsel was in possession of evidence indicating that defendant was psychotic at time of offense, but did not conduct further investigation); *Becton v. Barnett,* 920 F.2d 1190, 1191–92 (4th Cir.1990) ("[A] lawyer is not entitled to rely on his own belief about a defendant's mental condition, but instead must make a reasonable investigation."). In this case, however, there was evidence that Vernatter's lawyers obtained pertinent mental health records, reviewed them, and discussed these records with a psychiatrist prior to advising their client against pursuing a mental defense at trial. The initial investigation conducted by counsel, which turned up mental health records spanning the four-year period immediately preceding the shooting, indicated that Vernatter suffered from no malady other than chronic alcoholism, and an antisocial personality disorder largely tied to drinking.[3] Counsel's recommendation not to pursue a mental defense was tied to concerns that opening this issue would likely have a negative impact on the jury. The evidence related to such a defense—Vernatter's persistent drinking and related violent conduct—was obviously a double-edged sword. Moreover, there was evidence (which the circuit court gave credence) that Vernatter indicated to his lawyers that he did not suffer from any sort of blackout during the shooting. A lawyer may properly rely upon the truthfulness of confidential statements made by a defendant. *See Barnes v. Thompson,* 58 F.3d 971, 979 (4th Cir.1995). Having reviewed the record in this case, we conclude that Vernatter's lawyers conducted an objectively reasonable investigation into his mental history, and that he received competent assistance of counsel prior to pleading guilty. Consequently, the claim of ineffective assistance of counsel fails.

## B.

### *Rule 11 Violations*

Vernatter also contends that the circuit court erred in not considering the allega-

---

**3.** Throughout his brief, Vernatter suggests that had his lawyers obtained a psychiatric evaluation, he would have been found incompetent to stand trial. We find nothing in the record to support such an assertion. Evidence presented during proceedings below indicated that Vernatter routinely tested negative for alcohol use while

awaiting trial. Both of Vernatter's lawyers testified that he exhibited no signs of aberrant behavior during their representation of him. Indeed, the mental health records that he relies upon so heavily fail to indicate that Vernatter has any significant mental impairment when sober.

tion that he was denied due process as a result of the trial court failing to meet certain requirements of Rule 11 of the West Virginia Rules of Criminal Procedure in the course of his guilty plea colloquy.[4] Our review of the record indicates that this issue was not specifically addressed by the court's final order. As we stated in syllabus point 1 of *State ex rel. Watson v. Hill*, 200 W.Va. 201, 488 S.E.2d 476 (1997):

> West Virginia Code section 53–4A–7(c) (1994) requires a circuit court denying or granting relief in a habeas corpus proceeding to make specific findings of fact and conclusions of law relating to each contention advanced by the petitioner, and to state the grounds upon which the matter was determined.

We note that following the evidentiary hearing below, the circuit court requested that the parties submit legal memoranda addressing the issues raised in this case. The memorandum later submitted by Vernatter's habeas counsel, while it included an extensive discussion on the issue of ineffective assistance of counsel, did not address the issue of the alleged Rule 11 violation. While we may surmise that the circuit court deemed the issue waived, there is no reference to such conclusion in its final order.

■ While in most circumstances the failure to make specific findings of fact and conclusions of law regarding an issue raised in habeas proceedings would necessitate a remand, we need not take such action in the present case because Vernatter's Rule 11 claim was not properly cognizable in habeas.

■ This Court has consistently noted that "[a] habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syl. pt. 4, *State ex rel. McMannis v. Mohn*, 163 W.Va. 129, 254 S.E.2d 805 (1979), *cert. denied*, 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 112 (1983); *see also* syl. pt. 9, *State ex rel. Azeez v. Mangum*, 195 W.Va. 163, 465 S.E.2d 163 (1995); *State ex rel. Phillips v. Legursky*, 187 W.Va. 607, 420 S.E.2d 743 (1992).

■ Due process only requires that a guilty plea be voluntary, knowing and intelligent. The requirements of Rule 11, while they assist in ensuring that guilty pleas com-

---

4. Vernatter asserted in his habeas petition that the trial court's plea colloquy was deficient in that it did not inquire as to whether the plea was given without force, threats, or promises apart from the plea agreement itself. He also claimed that the court failed to inform him as to (1) the possible penalty for the offense to which he was pleading guilty; (2) his right not to plead guilty; (3) his right to call, confront, and cross-examine witnesses; and (4) that by pleading guilty, he was waiving his right to trial.

Vernatter's claim was therefore primarily geared toward the requirements of paragraphs (c) and (d) of Rule 11, which provide:

(c) *Advice to Defendant.* Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and

(2) If the defendant is not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant; and

(3) That the defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that the defendant has the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right against compelled self-incrimination, and the right to call witnesses; and

(4) That if a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial; and

(5) If the court intends to question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant has pleaded, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false swearing.

(d) *Ensuring That the Plea Is Voluntary.* The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the state and the defendant or the defendant's attorney.

port with this basic constitutional requirement, are not of themselves of constitutional significance.[5] Accordingly, the United States Supreme Court in *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979), held that assertions of Rule 11 error are generally not cognizable in the analogous federal context of post-conviction motions brought pursuant to 28 U.S.C. § 2255. Under the approach set forth in *Timmreck*, a habeas petitioner may successfully challenge a guilty-plea conviction based upon an alleged violation of Rule 11 only by establishing that the violation constituted a "constitutional or jurisdictional" error, 441 U.S. at 783, 99 S.Ct. at 2087 (citing *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)); or by showing that the error resulted in a " 'complete miscarriage of justice,' " or in a proceeding " 'inconsistent with the rudimentary demands of fair procedure,' " 441 U.S. at 784, 99 S.Ct. at 2087 (quoting *Hill*, 368 U.S. at 428, 82 S.Ct. at 471). Moreover, the petitioner must also demonstrate that "he was prejudiced in that he was unaware of the consequences of his plea, and, if properly advised, would not have pleaded guilty." *Id. Cf. Pugh v. Leverette*, 169 W.Va. 223, 234, 286 S.E.2d 415, 421 (1982). Thus, a prisoner may not collaterally attack a guilty plea under Rule 11 where "all that is shown is a failure to comply with the formal requirements of the Rule." *Id.* at 785, 99 S.Ct. at 2088.

In this case, all that Vernatter has alleged and proven is a failure to comply with some of the formal requirements of our rule governing the taking of guilty pleas. At no point in proceedings below did he show that the guilty plea was involuntary based upon shortcomings in the trial court's Rule 11 colloquy.[6] Applying *Timmreck's* analytical framework, we conclude that Vernatter's

claimed Rule 11 violation, without more, is not properly cognizable in an action for post-conviction relief under the West Virginia Post-Conviction Habeas Corpus Act, W. Va. Code §§ 53–4A–1 to –11.

██ As we have previously indicated, "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. pt. 3, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965). While in this case the circuit court did not address the Rule 11 claim in its final order, it is clear that neither the allegations of the petition nor the evidence presented at the evidentiary hearing supported relief. We therefore see no reason to remand the present case for further consideration of this issue.

## IV.

## CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Logan County denying habeas relief is affirmed.

Affirmed.

Justice SCOTT did not participate in the decision in this case.

Judge GARY L. JOHNSON, sitting by temporary assignment.

---

**5.** Rule 11 expressly acknowledges this: "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." W. Va. R.Crim. P. 11(h).

**6.** The only evidence at the evidentiary hearing concerning the voluntariness of Vernatter's plea

was his testimony that he pleaded guilty in order to spare his mother the anguish of seeing his sister testify against him at trial. Such evidence obviously did not establish that his plea was involuntary, or otherwise given without an awareness of its consequences.