# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Leonard Braynen, Jr.,**
**Petitioner Below, Petitioner**

**vs)   No. 16-0789** (Ohio County 16-C-151)

**Marvin Plumley, Warden,**
**Huttonsville Correctional Center,**
**Respondent Below, Respondent**

**FILED**

**August 25, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Leonard Braynen, Jr., pro se, appeals the August 5, 2016, order of the Circuit Court of Ohio County denying his petition for a writ of habeas corpus. Respondent Marvin Plumley, Warden, Huttonsville Correctional Center, by counsel Zachary Aaron Viglianco, filed a summary response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This Court has previously recited the underlying facts of petitioner's case in his first habeas proceeding:

> On April 3, 2009, petitioner drove a group of college students to Oglebay Park in Ohio County for a fraternity formal. The victim, who was a passenger in one of the two party buses, consumed too much alcohol on the ride and fell asleep in a cabin once they arrived. Her friends checked on her throughout the night. At one point, one of her friends observed petitioner leaving the room where the victim was sleeping. When she turned on the light, the victim stirred and exclaimed, "What happened? Someone just raped me!" When confronted by the students, petitioner admitted being in the victim's room, but denied that he sexually assaulted her.
>
> During the investigation by the Ohio County Sheriff's Department, petitioner spoke with officers after being given *Miranda* warnings and signing a waiver. It is undisputed that petitioner also consented to provide biological and

1

physical evidence. A search warrant was also obtained to collect the same evidence. The victim's DNA was found on petitioner's penis.

*Braynen v. Plumley*, No. 15-0334, 2016 WL 1417688, at *1 (W.Va. April 8, 2016) (memorandum decision) (footnote omitted). Because petitioner allegedly committed two separate sex acts on the victim, he was indicted on two counts of second-degree sexual assault pursuant to West Virginia Code § 61-8B-4, which sets forth the elements of the offense and the sentence of ten to twenty-five years of incarceration if a defendant is found guilty of the same.

Before trial, the State sought the admission of evidence of prior bad acts pursuant to Rule 404(b) of the West Virginia Rules of Evidence. Following a *McGinnis* hearing,[1] the circuit court admitted the evidence that petitioner (1) previously assaulted another woman who was incapacitated due to intoxication; and (2) had a prior conviction in the State of Ohio for indecent exposure. Thereafter, the parties entered into a plea agreement, pursuant to which petitioner agreed to enter a *Kennedy* plea[2] to one count of second-degree sexual assault and the State agreed to dismiss the other count of second-degree sexual assault. Petitioner also agreed to waive his right to a presentence investigation report.

The circuit court held a plea hearing on November 9, 2009. At the beginning of petitioner's plea colloquy,[3] the circuit court advised petitioner as follows: "If at any time you wish to confer with your attorney, you certainly are free to do so. You can do it either at counsel table, or you can go back to the jury room and take as much time as you need." Then, the circuit court warned petitioner that, as a result of his conviction, he may be subjected to a term of supervised release following his incarceration. When the circuit court asked petitioner whether he understood, he responded, "Can I take a minute?" Thereupon, the hearing transcript reflects that a discussion occurred off the record. Petitioner subsequently told the circuit court, "All right, sir." After the circuit court finished explaining the nature of supervised release, petitioner's trial attorney responded as follows:

> Your Honor, if I might interject, I realize Your Honor needs to cover these matters in detail and the detail you're covering them. [Petitioner] is a Bahamian national because he's—if the Court accepts his plea and enters the plea of

---

[1]In syllabus point 2 of *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994), we held that an in camera hearing is required when an offer of evidence is made under Rule 404(b).

[2]In syllabus point 1 of *Kennedy v. Frazier*, 178 W.Va. 10, 357 S.E.2d 43 (1987), we held that circuit courts may accept a criminal defendant's plea of guilty despite a claim of innocence "if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him."

[3]In *Call v. McKenzie*, 159 W.Va. 191, 195, 220 S.E.2d 665, 669 (1975), we suggested specific inquiries that should be made of the defendant at the time his guilty plea is taken in order to forestall future attack on the guilty plea by way of a habeas corpus proceeding.

guilty—considered to have committed [an] offense that, under INS regulations is view[ed] as a deportable offense.

Immediately upon his discharge from the [West Virginia Division of Corrections ("DOC")], he'd be deported back. . . .

Subsequently, the circuit court examined the plea agreement, noting that it was signed. Petitioner, petitioner's trial attorney, and the State's attorney acknowledged their signatures. The circuit court asked petitioner whether he understood the agreement and had discussed it with his trial attorney. Petitioner responded that he comprehended the agreement and that his trial attorney had answered the questions he had about it. The circuit court queried whether petitioner fully understood "the consequences of this plea agreement." Petitioner answered, "Correct, Sir."

Next, the circuit court asked petitioner whether he was satisfied with his trial attorney's representation. Petitioner answered, "Yes, sir." The circuit court inquired whether petitioner felt that his trial attorney had done anything improper. Petitioner responded, "No, no, sir." The circuit court specifically asked petitioner whether his trial attorney "explained to [petitioner] all the defenses that [he] would have to this charge?" Petitioner answered, "Yes, sir." Finally, the circuit court queried whether petitioner had any complaints about his trial attorney. Petitioner responded, "No, sir."

At the end of the plea colloquy, the circuit court asked petitioner whether he still desired to plead guilty, and petitioner answered affirmatively. The State then proffered the evidence it would present at trial. Petitioner's trial attorney responded to the State's proffer by stating that "[t]here's some serious holes in the State's case as far as we're concerned." Petitioner's trial attorney explained in front of petitioner and on the record that, because of inconsistent witness statements, "the time line doesn't add up very well." At this point, petitioner does nothing to interrupt his trial attorney to confer with him regarding the inconsistencies in the witness statements.

Consequently, petitioner's trial attorney proceeded to give the rationale for petitioner's *Kennedy* plea:

However, in light of the fact that the Court has ruled that the Rule 404(b) evidence will come in, we believe that that would function as the tipping point for the jury if this matter were to proceed to trial.

And given the fact that the—what's at stake here is [an] additional 10- to 25-year sentence if [petitioner] would be convicted of both [counts], and if the Court would sentence him consecutively[—]that, despite the fact that he maintains his innocence about what happened, that his overall interests are served best by entering this plea.

Accordingly, the circuit court found the State's proffer sufficient and allowed petitioner to enter a *Kennedy* plea to one count of second-degree sexual assault. The circuit court accepted petitioner's plea as properly made.

After a recess, the circuit court proceeded to the sentencing phase of the November 9, 2009, hearing. The circuit court asked petitioner whether he waived his right to a presentence investigation report. Though the waiver of that right was included in the plea agreement, the hearing transcript reflects that petitioner conferred with his trial attorney off the record prior to waiving his entitlement to a presentence investigation report. Next, the circuit court allowed petitioner to exercise his right of allocution. Following another discussion off the record, petitioner apologized to the victim and her family, "ask[ing them] from the bottom of [their] heart to forgive [him]." Petitioner also thanked his trial attorney and the State for "working with [him] and giving [him] the opportunity . . . some day to be released and return . . . to [his] family, [his] two beautiful daughters[,] and [his] parents back in the Bahamas[.]" Thereafter, the circuit court imposed the statutorily-specified sentence of ten to twenty-five years of incarceration. Petitioner did not file an appeal in his criminal case.

In 2010, petitioner filed a petition for a writ of habeas corpus that included claims that his trial attorney failed to adequately explain to him the consequences of his *Kennedy* plea and that he was not provided all the evidence against him prior to the entry of his plea. The circuit court appointed an attorney to represent petitioner in that habeas proceeding. Petitioner's habeas attorney subsequently filed an amended petition, which raised different claims including that his trial attorney failed to inform petitioner of his rights under Article 36 of the Vienna Convention on Consular Relations to have authorities notify the Bahamian Consulate of his arrest. The circuit court denied the amended petition by order entered on March 7, 2015. When petitioner appealed the March 7, 2015, order, he did not challenge the denial of the ineffective assistance of trial counsel claim. *Braynen*, 2016 WL 1417688, at *4 n.11. In *Braynen*, this Court affirmed the circuit court's denial of habeas relief. *Id.* at *4.

On May 19, 2016, petitioner filed a habeas petition, raising claims substantially similar to those asserted in his pro se petition in his first habeas proceeding: (1) his trial attorney failed to explain to petitioner that he would be deported to the Bahamas following the discharge of his sentence of incarceration; and (2) his trial attorney either did not know of the inconsistent witness statements or failed to explain the inconsistencies to petitioner prior to the entry of his plea. Petitioner asserted that his habeas attorney failed to develop these claims of ineffective assistance of trial counsel in the first habeas proceeding. By order entered on August 5, 2016, the circuit court denied the habeas petition. The circuit court found that the claims raised in the petition were previously and finally adjudicated and/or waived, or were without merit, based on "the applicable law and the underlying [c]ourt file." Petitioner now appeals from the circuit court's August 5, 2016, order denying habeas relief.

We apply the following standard of review in habeas appeals:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

4

Syl. Pt. 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006). In syllabus point 1 of *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973), we held as follows:

> A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief.

On appeal, petitioner contends that the circuit court erred in denying his habeas petition without a hearing and without appointment of counsel because his claims had merit. Petitioner further contends that the circuit court's abbreviated findings were insufficient to deny a meritorious petition. Respondent counters that the circuit court properly denied the instant petition because the claims raised therein were previously and finally adjudicated and/or waived, or were without merit. We agree with respondent.

With regard to the sufficiency of the circuit court's findings, we find that the circuit court properly determined that petitioner's contention that his habeas attorney failed to develop viable claims of ineffective assistance of trial counsel was without merit based on a review of "the applicable law and the underlying [c]ourt file."[4] We set forth the applicable standards for reviewing claims of ineffective assistance in syllabus points 3, 4, and 6 of *State ex rel. Vernatter v. Warden, West Virginia. Penitentiary*, 207 W.Va. 11, 528 S.E.2d 207 (1999):

> 3. "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syllabus point 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).
>
> 4. "In reviewing counsel's performance, courts must apply an objective standard

---

[4]Petitioner concedes that, in order to obtain habeas relief, he must show that an exception to the doctrine of res judicata, as enunciated by this Court in *Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981), applies to his case. In syllabus point 4 of *Losh*, we held that "[a] prior omnibus habeas corpus hearing is res judicata as to all matters raised and as to all matters known or which with reasonable diligence could have been known; *however, an applicant may still petition the court on the following grounds: ineffective assistance of counsel at the omnibus habeas corpus hearing*[.]" *Id.* at 762-63, 277 S.E.2d at 608 (Emphasis added). Though no hearing was held in petitioner's first habeas proceeding, petitioner relies on syllabus point 4 of *Losh* as the basis for the instant petition.

and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." Syllabus point 6, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

* * * *

6. In cases involving a criminal conviction based upon a guilty plea, the prejudice requirement of the two-part test established by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), demands that a habeas petitioner show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

We find that the transcript of the November 9, 2009, plea hearing refutes petitioner's claims that (1) his trial attorney failed to explain to petitioner that he would be deported to the Bahamas following the discharge of his sentence of incarceration; and (2) his trial attorney either did not know of the inconsistent witness statements or failed to explain the inconsistencies to petitioner prior to the entry of his plea. With regard to the first claim, near the beginning of the hearing, petitioner's trial attorney specifically stated that a conviction for second-degree sexual assault "is view[ed] as a deportable offense" under federal law and that "[i]mmediately upon his discharge from the DOC, he'd be deported back." Consequently, prior to the entry of his plea, petitioner was informed on the record that, immediately upon the discharge of his sentence of incarceration, he would be deported to the Bahamas. Moreover, petitioner recognizes this fact in his allocution, during which he thanked his trial attorney and the State for "working with [him] and giving [him] the opportunity some day to be released and return . . . to [his] family, [his] two beautiful daughters[,] and [his] parents *back in the Bahamas[.]*" (emphasis added).

With regard to petitioner's second claim, the plea hearing transcript shows that his trial attorney knew of the inconsistent witness statements because the attorney states that those inconsistencies meant that "[t]here's some serious holes in the State's case as far as we're concerned." Petitioner's trial attorney explained in front of petitioner and on the record that, because of inconsistent witness statements, "the time line doesn't add up very well." Though petitioner appears to be arguing that his attorney failed to explain the significance of the inconsistent witness statements prior to the start of the plea hearing, the circuit court earlier asked petitioner whether counsel "explained to [petitioner] all the defenses that [he] would have to this charge?" Petitioner answered, "Yes, sir."

Petitioner contends that his statements of satisfaction with his trial attorney should be given little weight because of his claim that he was not fully informed at the time of his plea hearing. However, the hearing transcript reflects that, when petitioner felt that he needed to confer further with his attorney, he knew to follow the circuit court's instructions from the start of the proceeding

that he could interrupt and have a discussion with counsel off the record. Petitioner first did this during the circuit court's explanation about the possibility of a term of supervised release following his incarceration, asking the court, "Can I take a minute?" The second time petitioner had an off-the-record discussion with his trial attorney was when the circuit court inquired whether petitioner was waiving his right to a presentence investigation report. Petitioner did not answer in the affirmative until a discussion occurred off the record. Therefore, we find it significant that at the point at which petitioner's trial attorney is discussing the inconsistent witness statements, petitioner does nothing to interrupt his trial attorney to confer with him regarding those inconsistencies.

Finally, the plea hearing transcript reflects the rationale for petitioner's *Kennedy* plea:

[Petitioner's trial attorney]:    However, in light of the fact that the Court has ruled that the Rule 404(b) evidence will come in, we believe that that would function as the tipping point for the jury if this matter were proceed to trial.

And given the fact that the—what's at stake here is [an] additional 10- to 25-year sentence if [petitioner] would be convicted of both [counts], and if the Court would sentence him consecutively[—]that, despite the fact that he maintains his innocence about what happened, that his overall interests are served best by entering this plea.

Moreover, petitioner recognized that the reduction in the potential sentence benefitted him in his allocution, during which he indicates that the plea agreement provided him the opportunity to return to his family in a reasonable amount of time. Therefore, we find that, based on the transcript of the November 9, 2009, plea hearing, petitioner cannot show that the performance of his trial attorney fell below an objective standard of reasonableness or, assuming arguendo that the attorney's performance was deficient in some way, that petitioner would have insisted on going to trial. Because both of petitioner's claims of ineffective assistance of trial counsel were without merit, his habeas attorney was not ineffective in failing to raise them in the prior proceeding. Accordingly, we conclude that the circuit court properly denied petitioner's instant petition without a hearing or the appointment of counsel.

For the foregoing reasons, we affirm the circuit court's August 5, 2016, order dismissing petitioner's petition for a writ of habeas corpus.

Affirmed.

**ISSUED:**  August 25, 2017

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

7