# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Jackie M. Martin,
Petitioner Below, Petitioner

vs)  No. 16-1062 (Wood County 12-P-147)

Michael Martin, Acting Warden,
Huttonsville Correctional Center,
Respondent Below, Respondent

**FILED**

**January 8, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Jackie M. Martin, by counsel Reggie R. Bailey, appeals the Circuit Court of Wood County's October 13, 2016, order denying his amended second petition for writ of habeas corpus. Respondent Michael Martin, Acting Warden, by counsel Robert L. Hogan, filed a response.[1] On appeal, petitioner argues that the circuit court erred in denying him habeas corpus relief when he was denied effective assistance of prior habeas counsel and due to the imposition of unconstitutional sentences for his kidnapping and second-degree robbery convictions.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2000, petitioner was indicted on one count each of kidnapping, aggravated robbery, impersonation of a law-enforcement officer, extortion, and first-degree sexual abuse. These charges stemmed from an incident that occurred in Williamstown, West Virginia, on January 6, 2000. Petitioner made repeated and threatening calls to a female acquaintance, the victim in this matter, at her place of work demanding $150. The victim left work early due to being upset and fearful over these threatening calls. As the victim was walking home from work, petitioner drove up and demanded that she get into his vehicle. Petitioner drove the victim to her apartment, where he verbally, physically, and sexually abused her in an effort to induce her to provide him the money. While petitioner and the victim were at the victim's apartment, the

---

[1]Since the filing of the petition in this case, the warden at Huttonsville Correctional Center has changed and the acting warden is now Michael Martin. The Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

1

victim's grandmother arrived after learning that the victim had left work. The victim testified that petitioner was holding her wrist tightly during the time that her grandmother was there, so she did not alert her grandmother to the danger she was in for fear that petitioner would hurt her more or harm her grandmother. Ultimately, the victim's grandmother left, and the victim obtained a payday loan to provide petitioner the $150 he demanded. The victim later reported petitioner to the police, and he was arrested that evening.

At trial, petitioner asserted an alibi defense. Surveillance footage from the victim's place of work showed her leaving work at approximately 8:12 a.m. The victim lived close to her place of work, and she testified that petitioner picked her up not long after she left work. Petitioner, however, presented evidence that he dropped his wife off at work shortly before 8:00 a.m., was at the dry cleaners shortly before 8:02 a.m., picked up an acquaintance by the name of Tammy Hoose to take to school, stopped by Flanders Brothers Insurance Agency ("Flanders"), and then dropped Ms. Hoose off at school. Ms. Hoose proceeded to sign-in at school, marking 8:45 a.m. as her arrival time. All of these actions purportedly took place across the river from Williamstown, in Marietta, Ohio.

Janet Wunder, an employee of Flanders, testified that petitioner was at Flanders on January 6, 2000, for only a few minutes at some point between 8:20 a.m. and 8:40 a.m. She recounted that petitioner entered her workplace and asked to speak with another employee, Julie Hupp. Ms. Hupp, however, was out of the office for a doctor's appointment. Ms. Wunder informed petitioner of this fact, and petitioner left the office. Ms. Wunder also testified that she recalled seeing a news report of petitioner's arrest later that evening; however, an employee of the local news station testified that news of petitioner's arrest did not air until approximately one week after his arrest, thereby calling into question the date on which Ms. Wunder saw petitioner. Ms. Wunder's work calendar, however, contained a notation of Ms. Hupp's doctor's appointment on January 6. Ms. Hupp also later provided a doctor's note confirming her January 6, 2000, appointment. Petitioner's trial counsel did not present the work calendar or doctor's note, and he did not call Ms. Hupp as a witness.

At the conclusion of petitioner's trial, the jury found him guilty of kidnapping, aggravated robbery, extortion, and first-degree sexual abuse. Petitioner was sentenced to life imprisonment with a recommendation of mercy for kidnapping, forty years of incarceration for aggravated robbery, one year to five years of incarceration for extortion, and one year to five years of incarceration for first-degree sexual abuse. Petitioner's sentences for aggravated robbery, kidnapping, and first-degree sexual abuse were ordered to run consecutively, while petitioner's extortion sentence was ordered to run concurrently to the other sentences.[2] Petitioner filed a direct appeal, which this Court refused on May 9, 2001.

---

[2]The legislature amended the robbery statute between the date of petitioner's conviction and the date of sentencing to define separately first-degree robbery and second-degree robbery. The circuit court determined that, as a result, petitioner was entitled to elect the lesser sentence for second-degree robbery in effect at the time of his sentencing. Accordingly, petitioner's "aggravated robbery" sentence was corrected, and petitioner was sentenced to not less than five nor more than eighteen years of imprisonment for that conviction.

2

Petitioner filed his first petition for writ of habeas corpus on May 6, 2002. Following the appointment of counsel and the filing of an amended first petition, the circuit court held an omnibus hearing. Following the hearing, the parties submitted supplemental briefing. On May 1, 2006, the circuit court denied petitioner's amended first petition. This Court refused petitioner's appeal of the denial of his amended first petition on November 28, 2006.

Petitioner filed a second petition for writ of habeas corpus on April 11, 2012, which is the subject of the instant appeal. Petitioner was appointed counsel and filed an amended second petition. The circuit court held an omnibus hearing on petitioner's amended second petition. By order entered on October 13, 2016, petitioner's amended second petition was denied. It is from this order that petitioner appeals.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

We also bear in mind that

> [a] prior omnibus habeas corpus hearing is res judicata as to all matters raised and as to all matters known or which with reasonable diligence could have been known; however, an applicant may still petition the court on the following grounds: ineffective assistance of counsel at the omnibus habeas corpus hearing; newly discovered evidence; or, a change in the law, favorable to the applicant, which may be applied retroactively.

Syl. Pt. 4, *Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981).

Petitioner's first assignment of error is that he was denied effective assistance of habeas counsel in his first habeas proceeding. Petitioner asserts eight discrete bases to support this contention: first, habeas counsel's failure to challenge trial counsel's failure to call Ms. Hupp at trial; second, habeas counsel's failure to challenge trial counsel's failure to secure and produce the desk calendar from Flanders; third, habeas counsel's failure to challenge trial counsel's failure to secure and produce the doctor's note from Ms. Hupp's doctor; fourth, habeas counsel's failure to "produce or investigate [Ms.] Hupp as a witness at the habeas hearing[;]" fifth, habeas counsel's failure to produce the desk calendar at the habeas hearing; sixth, habeas counsel's failure to produce the doctor's note at the habeas hearing; seventh, habeas counsel's failure to call Ms. Hoose at the habeas hearing "to illustrate the importance of Julie Hupp's testimony[;]"

and finally, habeas counsel's failure to call Ms. Wunder at the habeas hearing "to illustrate the importance of [Ms.] Hupp's testimony." Petitioner argues that

> [i]f the jury had been convinced as to the date of Ms. Wunder's and Ms. Hoose's encounter with . . . [p]etitioner, then the meeting times of 8:30 a.m. with Ms. Wunder and 8:45 a.m. [Ms. Hoose's school sign-in], could have exonerated . . . [p]etitioner. . . These matters should have been properly investigated before trial, and properly presented by prior habeas counsel.

Petitioner acknowledges that during the hearing on his first habeas petition, habeas counsel produced evidence concerning the alibi issue; however, petitioner contends that only "[d]irect testimony by Ms. Hupp, [Ms.] Wunder[,] and [Ms.] Hoose" could "fully demonstrate the errors of trial counsel." Likewise, although petitioner acknowledges that references to the desk calendar and doctor's note were made during his first habeas hearing, petitioner maintains that because "seeing is believing," producing this evidence was necessary to "have clearly demonstrated the critical importance of the trial errors." In sum, petitioner maintains that prior habeas counsel "failed to acknowledge or present key portions of [his alibi] defense," which prevented the circuit court from adequately considering the issue.

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). A claim may be disposed of for failure to meet either prong of the test. Syl. Pt. 5, in part, *State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 465 S.E.2d 416 (1995). "Failure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim." *State ex rel. Vernatter v. Warden, W.Va. Penitentiary*, 207 W.Va. 11, 17, 528 S.E.2d 207, 213 (1999) (citation omitted).

The crux of petitioner's argument is that habeas counsel failed to challenge trial counsel's failure to adequately develop his alibi defense and that habeas counsel similarly failed to present the necessary evidence to solidify his alibi defense. We do not find that habeas counsel's representation was deficient under an objective standard of reasonableness. Habeas counsel developed this issue during petitioner's first omnibus hearing. Habeas counsel presented the testimony of Paul Morton, an investigator utilized by petitioner's trial counsel in preparation for petitioner's trial. Mr. Morton testified as to the particular pieces of evidence petitioner contends should have been introduced. Petitioner's trial counsel also testified at the omnibus hearing. The evidence and witness testimony petitioner argues should have been produced were referenced and addressed during his first habeas hearing. Accordingly, we find no abuse of discretion in the circuit court's conclusion that petitioner's habeas counsel's representation was not deficient.

Moreover, petitioner cannot demonstrate that the result of the prior habeas would have been different had counsel's representation not been allegedly deficient. Fully crediting

4

petitioner's alibi would not have precluded him from committing the offenses of which he was convicted. Williamstown, West Virginia and Marietta, Ohio are in close geographic proximity to one another. Testimony was adduced at the prior omnibus hearing that, depending on traffic, it can take as few as three minutes to get from one town to the other. Thus, even if petitioner's alibi defense had been bolstered in the way petitioner contends was necessary, he has failed to show that the result of his first habeas would have been different. Thus, we find no abuse of discretion in the circuit court's conclusion that petitioner failed to establish that he received ineffective assistance of habeas counsel.

Petitioner's second assignment of error is that the life sentence imposed for his kidnapping conviction violates his right to due process of law.[3] Specifically, petitioner contends that because bodily harm was not alleged or found beyond a reasonable doubt, petitioner's life sentence violates his right to due process of law and trial by jury.

Petitioner raised a similar claim during his first habeas proceeding. Petitioner does not assert that this assignment of error is proper for reconsideration due to any ineffective assistance of prior habeas counsel; newly discovered evidence; or, a change in the law, favorable to the applicant, which may be applied retroactively. *Losh*, 166 W.Va. at 762-63, 277 S.E.2d at 608,

---

[3]At the time petitioner committed the crime of kidnapping, this State's kidnapping statute read, in relevant part, that

> [a]ny person who, by force, threat, duress, fraud or enticement take, confine, conceal, or decoy, inveigle or entice away, or transport into or out of this state or within this state, or otherwise kidnap any other person, or hold hostage any other person for the purpose or with the intent of taking, receiving, demanding or extorting from such person, or from any other person or persons, any ransom, money or other thing, or any concession or advantage of any sort, or for the purpose or with the intent of shielding or protecting himself, herself, or others from bodily harm or of evading capture or arrest after he or she or they have committed a crime shall be guilty of a felony and, upon conviction, shall be punished by confinement by the division of corrections for life . . . *Provided*, That the following exceptions shall apply: (1) A jury may, in their discretion, recommend mercy[;] . . . (3) in all cases where the person against whom the offense is committed is returned, or is permitted to return, alive, without bodily harm having been inflicted upon him, but after ransom, money or other thing, or any concession or advantage of any sort has been paid or yielded, the punishment shall be confinement by the division of corrections for a definite term of years not less than twenty nor more than fifty; (4) in all cases where the person against whom the offense is committed is returned, or is permitted to return, alive, without bodily harm having been inflicted upon him or her, but without ransom, money or other thing, or any concession or advantage of any short having been paid or yielded, the punishment shall be confinement by the division of corrections for a definite term of years not less than ten nor more than thirty.

W.Va. Code § 61-2-14a(a) (1999).

Syl. Pt. 4, in part. Accordingly, petitioner's prior omnibus hearing is res judicata as to this issue. *Id.*

Petitioner's final assignment of error is that his sentence of five to eighteen years of imprisonment for his second-degree robbery conviction is unconstitutional because he was never charged or indicted for that offense. As set forth above, as a result of a change in the robbery statute, the circuit court found that petitioner was entitled to elect a lesser sentence for second-degree robbery under the new statute. Petitioner maintains that the proper remedy was to have his aggravated robbery conviction overturned and set aside as being unconstitutional.

Petitioner offers no law in support of this argument. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure mandates that a petitioner's brief "contain an argument exhibiting clearly the points of fact *and law* presented, the standard of review applicable, and *citing the authorities relied on*, under headings that correspond with the assignments of error." (Emphasis added.) In an Administrative Order entered on December 10, 2012, then-Chief Justice Menis E. Ketchum specifically stated that "[b]riefs that lack citation of authority, fail to structure an argument applying applicable law, fail to raise any meaningful argument that there is error, or present only a skeletal argument" and "[b]riefs with arguments that do not contain a citation to legal authority to support the argument" are not in compliance with the Rules of Appellate Procedure. Because petitioner provides no law to support this assignment of error, it is not in compliance with our Rules and we decline to address it on appeal.

For the foregoing reasons, we affirm the circuit court's October 13, 2016, order denying petitioner's amended second petition for writ of habeas corpus.

Affirmed.

**ISSUED:** January 8, 2018

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker