**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Clayton Eugene Eagle,**
**Petitioner Below, Petitioner**

**vs.)  No. 22-0198** (Preston County 19-C-78)

**George Trent, Superintendent,**
**Pruntytown Correctional Center,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Clayton Eugene Eagle appeals the order of the Circuit Court of Preston County, entered on February 14, 2022, denying his amended petition for a writ of habeas corpus.[1] Mr. Eagle is serving a cumulative term of five to twenty years for his conviction (based on his entry of a guilty plea) of four counts of third-offense domestic battery, as adjusted for a recidivist enhancement. On appeal, Mr. Eagle asserts a single assignment of error, in which he argues that his counsel's assistance was so ineffective that his guilty plea was involuntary.

This matter is before us to review the denial of a petition for a writ of habeas corpus. "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006). Upon our review, we determine that oral argument is unnecessary and that a memorandum decision is appropriate. See W. Va. R. App. Proc. 21.

In March 2018, Mr. Eagle was indicted on four counts of third-offense domestic battery in violation of West Virginia Code §§ 61-2-28(a) and (d), and he subsequently pled guilty to all four counts.[2] The plea agreement memorialized the State's reservation of its right to file a recidivist

---

[1] Mr. Eagle appears by counsel Jeremy B. Cooper. George Trent, Superintendent of the Pruntytown Correctional Center, appears by Attorney General Patrick Morrisey and Assistant Attorney General William E. Longwell.

[2] Those subsections, at the time of Mr. Eagle's domestic altercation, provided:

(a) Domestic battery.— Any person who unlawfully and intentionally makes physical contact force capable of causing physical pain or injury to his or her family or household member or unlawfully and intentionally causes physical harm to his

(continued. . . )

information pursuant to West Virginia Code § 61-11-18(a).[3] Each count to which Mr. Eagle pled guilty was based on an altercation between Mr. Eagle and his girlfriend that occurred the prior November, and the State reported at the plea hearing that the evidence would show that Mr. Eagle kicked, hit, elbowed, and covered the mouth of his victim in the altercation. Mr. Eagle affirmed that the allegations were accurate. He also affirmed that his attorney explained the plea agreement to him, and that he understood its ramifications. After the circuit court accepted Mr. Eagle's plea, the State filed an information charging that Mr. Eagle was a recidivist, having been convicted of

---

or her family or household member, is guilty of a misdemeanor and, upon conviction thereof, shall be confined in jail for not more than twelve months, or fined not more than $500, or both fined and confined.

. . .

(d) Any person who has been convicted of a third or subsequent violation of the provisions of subsection (a) or (b) of this section, a third or subsequent violation of the provisions of section nine of this article or subsection (a), section fourteen-g of this article where the victim was a current or former spouse, current or former sexual or intimate partner, person with whom the defendant has a child in common, person with whom the defendant cohabits or has cohabited, a parent or guardian, the defendant's child or ward or a member of the defendant's household at the time of the offense or who has previously been granted a period of pretrial diversion pursuant to section twenty-two, article eleven of this chapter for a violation of subsection (a) or (b) of this section or a violation of the provisions of section nine of this article or subsection (a), section fourteen-g of this article in which the victim was a current or former spouse, current or former sexual or intimate partner, person with whom the defendant has a child in common, person with whom the defendant cohabits or has cohabited, a parent or guardian, the defendant's child or ward or a member of the defendant's household at the time of the offense, or any combination of convictions or diversions for these offenses, is guilty of a felony if the offense occurs within ten years of a prior conviction of any of these offenses and, upon conviction thereof, shall be confined in a state correctional facility not less than one nor more than five years or fined not more than $2,500, or both fined and confined.

[3] That subsection, at the time Mr. Eagle's domestic altercation, provided:

Except as provided by subsection (b) of this section, when any person is convicted of an offense and is subject to confinement in the state correctional facility therefor, and it is determined, as provided in section nineteen of this article, that such person had been before convicted in the United States of a crime punishable by confinement in a penitentiary, the court shall, if the sentence to be imposed is for a definite term of years, add five years to the time for which the person is or would be otherwise sentenced. Whenever in such case the court imposes an indeterminate sentence, the minimum term shall be twice the term of years otherwise provided for under such sentence.

third or subsequent offense domestic battery in 2009 and of malicious assault in 1996.[4] When Mr. Eagle appeared for his sentencing hearing, he affirmed that he was the person convicted in the earlier felonies. The circuit court sentenced Mr. Eagle to imprisonment for one to five years for each of the third-offense domestic battery convictions, with the sentences for each running consecutively. Based on his recidivist conviction and the statutory requirement at that time, his sentence for the first count was enhanced to a term of two to five years. Mr. Eagle did not appeal his conviction or sentence.

Mr. Eagle filed a petition for a writ of habeas corpus in 2019. He was appointed counsel and the circuit court conducted an omnibus hearing in December 2021, at which Mr. Eagle and his former counsel testified. Relevant to this appeal, Mr. Eagle testified that his counsel failed to speak to Mr. Eagle's mother, a potential alibi witness who "could prove [he] wasn't there" when his girlfriend was attacked, and failed to obtain video surveillance footage from a store where he claimed to be at the time.[5] Mr. Eagle further testified that he had minimal contact with his counsel and that he first became aware of the proposed plea agreement when he met with his attorney in a conference room at the county courthouse immediately before his plea hearing. He asserted that his counsel was deficient in numerous ways, including in failing to investigate the alibi defense and in failing to file critical pretrial motions.

The circuit court found Mr. Eagle's testimony incredible. In its order denying habeas relief, the circuit court found that Mr. Eagle's accusations on the matter of his counsel's performance were belied on the face of the record. Mr. Eagle's counsel, for example, had filed at least four pretrial motions before the plea hearing was conducted. Moreover, these motions were scheduled for hearing one week prior to the plea hearing, but Mr. Eagle's counsel requested, and was granted, a continuance of the motions hearing when he informed the circuit court a plea proposal was communicated to Mr. Eagle and the parties wished to pursue plea discussions. Mr. Eagle did not dispute this fact when testifying at the omnibus hearing.

Here, Mr. Eagle centers his challenge on the assertion that his counsel failed to investigate his potential alibi defense. His counsel's failure, he argues, both signifies his counsel's ineffectiveness and shows that Mr. Eagle was not adequately advised to enable him to enter a voluntary plea. We review Mr. Eagle's arguments with the understanding that

---

[4] Though the circuit court's order denying habeas relief relates two prior felony convictions, it is apparent that Mr. Eagle's criminal sentence was enhanced for a single prior felony.

[5] The criminal complaint underlying Mr. Eagle's indictment stated that officers responding to the report of the domestic disturbance arrived during the conflict, heard Mr. Eagle yelling, forced their way into the home, and eventually found Mr. Eagle hiding in a crawl space. In view of these facts, we do not perceive a reasonable probability that Mr. Eagle's counsel committed errors that induced Mr. Eagle to forego his right to a trial by a jury. *See* Syl. Pt. 6, *State ex rel. Vernatter v. Warden, W. Va. Penitentiary*, 207 W. Va. 11, 528 S.E.2d 207 (1999).

> [i]n the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). Furthermore,

> [i]n cases involving a criminal conviction based upon a guilty plea, the prejudice requirement of the two-part test established by [*Strickland*/*Miller*] demands that a habeas petitioner show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Syl. Pt. 6, *State ex rel. Vernatter v. Warden, W. Va. Penitentiary*, 207 W. Va. 11, 528 S.E.2d 207 (1999).

Mr. Eagle's testimony at the omnibus hearing was not credited by the circuit court to establish his counsel's actions or inactions. Without reliable testimony, there was no evidence to support a finding that Mr. Eagle's counsel performed in an objectively unreasonable manner. Mr. Eagle presents his arguments on appeal essentially as he presented them to the circuit court, without offering any reason that the circuit court was wrong to conclude as it did. Consequently, there is no clear error in the circuit court's findings. We further note that Mr. Eagle testified that he entered into the plea agreement because he feared that he would receive a lifetime recidivist sentence.[6] It appears, then, that Mr. Eagle was adequately advised of his sentencing exposure, and he understood the benefit of the plea agreement he ultimately entered.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 13, 2023

---

[6] At the time of Mr. Eagle's domestic altercation, West Virginia Code § 61-11-18(c) provided:

> When it is determined, as provided in section nineteen of this article, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life.

4

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn