# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Michael S. Thompson,**
**Petitioner Below, Petitioner**

**vs.)  No. 18-0387** (Kanawha County 17-P-130)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**November 8, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Michael S. Thompson, by counsel Matthew A. Victor, appeals the Circuit Court of Kanawha County's April 4, 2018, order denying his petition for a writ of habeas corpus. Respondent Donnie Ames, by counsel Benjamin F. Yancey, III, filed a response in support of the circuit court's order.[1] On appeal, petitioner argues that the circuit court erred in denying habeas relief because the trial court failed to provide a hearing upon his pro se motion to withdraw his guilty plea, he received ineffective assistance of trial counsel, and his indictment for first-degree robbery was defective.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2010, petitioner was indicted on one count of first-degree murder and one count of first-degree robbery.[2] Both crimes were related to the death of James Gillespie that

---

[1]Since the filing of the appeal in this case, the superintendent at Mount Olive Correctional Complex has changed and the superintendent is now Donnie Ames. The Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure. Additionally, effective July 1, 2018, the positions formerly designated as "wardens" are now designated "superintendents." *See* W. Va. Code § 15A-5-3.

[2]Petitioner and his co-defendant, Jimmy Thompson, were each indicted for the same crimes and both ultimately pled guilty to first-degree murder.

1

occurred in November of 2009 at his home in South Charleston, West Virginia. Two attorneys, Herbert Hively and Dennis Bailey, were appointed to represent petitioner. In March of 2010, trial counsel filed motions requesting petitioner undergo an independent examination and a psychological/psychiatric evaluation to determine his competency to stand trial and his criminal responsibility. The trial court granted the motions, petitioner underwent testing, and he was found competent to stand trial and criminally responsible.

While preparing for trial, trial counsel received letters from three inmates housed in the same regional jail as petitioner and his co-defendant. In these letters, the inmates alleged that they had spoken with the co-defendant who bragged that he committed the murder and that he either threatened petitioner to go along with the murder or that petitioner did not participate in the murder. Trial counsel obtained permission to contact these individuals and sent a private investigator to interview them.

On June 3, 2010, the parties entered into a plea agreement with the terms that petitioner would plead guilty to first-degree murder in return for the State dismissing the count of first-degree robbery and standing silent at sentencing. On June 4, 2010, the trial court accepted petitioner's guilty plea to first-degree murder. At the plea hearing, the trial court held the following exchange with petitioner concerning his trial counsel:

> Q: Mr. Hively and Mr. Bailey have gone over with you the State's evidence in this case?
>
> A: Yes, sir.
>
> Q: Gone over the discovery with you?
>
> A: Yes, sir.
>
> Q: They've made a—talked to you about the events of this evening?
>
> A: Yes, sir.
>
> Q: They have made an investigation of these facts?
>
> A: Yes, sir.
>
> Q: They have done everything that you think they should do to properly represent you?
>
> A: Yes, sir.
>
> Q: You are completely satisfied with their representation?
>
> A: Yes, sir.

Q: They've told you that if you want to go to trial on Monday, that they would be prepared to try this case for you on Monday morning; is that correct?

A: That's correct.

Petitioner also offered the following testimony regarding his voluntariness of accepting the plea agreement:

Q: Has anyone promised you a lenient sentence or made any promises to you other than that which is contained in the plea agreement to induce you to plead guilty against your free will?

A: No, sir.

Q: Has anyone threatened, intimidated, coerced or pressured you in any way to plead guilty against your free will?

A: No, sir.

Petitioner then offered the following testimony regarding the factual basis for the trial court's acceptance of the plea agreement:

Q: You're charged with first degree murder. What is your plea: guilty or not guilty?

A: Guilty.

Q: All right. Please tell me what happened. Who, what, when and where?

A: I was at Oaks Field in June drinking with . . . [the co-defendant] and Jarrett Hall.

. . .

A: And [the co-defendant] had called [the victim] and asked if we could all three come up . . . . And he said that he had beer at the house waiting for us, if we wanted to come up and drink. So, we waited. We walked up there to his house. We all sat down and drank, and then he started giving us pills and letting us drink. And then I left, went to the store. I came back about an hour later, and [the co-defendant] looked at me real funny, I guess trying to hint to me about something; and [the victim] had noticed that his pills were missing; and as soon as he noticed that his pills were missing, [the co-defendant] struck him in the face and Jarett Hall ran.

3

And at that time I just instantly reacted. I was drunk and high, and I just started punching and kicking [the victim] at the same time as [the co-defendant] was, and then [the co-defendant] started stabbing him, and I was still punching him and kicking him. But then [the co-defendant] stopped stabbing him and then put a belt around his neck and started choking him with a belt. And at that time I just watched him do it. And then after that I ransacked the house, and I took some coins and a car key, and that's—and then I turned myself in.

The trial court then clarified the following:

Q:     And you have freely and voluntarily tendered both your oral and written plea of guilty to the [c]ourt?

A:     Yes, sir

Q:     Have you truthfully answered all of my questions?

A:     Yes, sir.

Also at the plea hearing, petitioner submitted "Defendant's Statement in Support of Guilty Plea," wherein he admitted to "knowingly aid[ing] and abet[ting] Jimmy Thompson by hitting and kicking [the] victim as he was being stabbed" and "that [the victim] died as a result of [those] injuries."

Subsequently, on November 3, 2010, petitioner sent a pro se letter to the trial court seeking to "re-tract (sic)" his guilty plea. However, the trial court did not review the letter at that time as trial counsel had not been given the opportunity to review or object to its submission to the trial court.

On November 29, 2010, the trial court held a sentencing hearing wherein petitioner raised the issue of his pro se letter. According to the record, the letter specifically stated "I wish . . . that you re-tract (sic) this Plea I was co-hearsed (sic) into signing" and "I am not guilty of Murder. I myself did not commit Murder." The letter generally alleged that counsel tricked and coerced petitioner into pleading guilty, and counsel disputed those allegations at the sentencing hearing. Nonetheless, counsel argued to the trial court that petitioner wanted his guilty plea withdrawn, but the trial court proceeded with sentencing petitioner to life, with mercy. Petitioner did not file a direct appeal of his conviction or sentence.

Thereafter, in April of 2017, petitioner filed a pro se petition for a writ of habeas corpus. After appointment of habeas counsel, petitioner filed an amended petition which set forth the following grounds for relief: the trial court failed to permit petitioner to withdraw his plea, petitioner received ineffective assistance of trial counsel, and petitioner's indictment for first-degree robbery was defective. In January of 2018, the habeas court held an omnibus evidentiary

hearing, after which it entered a forty-one-page order on April 4, 2018, denying relief. It is from this order that petitioner now appeals.

Our review of the habeas court's order denying the petition is governed by the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 701 S.E.2d 97 (2009).

First, petitioner argues that the trial court erred in failing to address his pro se letter seeking to withdraw his guilty plea. "In a case where the defendant seeks to withdraw his guilty plea before sentence is imposed, he is generally accorded the right if he can show any fair and just reason." Syl., *State v. Whitt*, 183 W. Va. 286, 395 S.E.2d 530 (1990) (quoting Syl. Pt. 1, *State v. Olish,* 164 W. Va. 712, 266 S.E.2d 134 (1980)). We have previously held,

> [n]otwithstanding that a defendant is to be given a more liberal consideration in seeking leave to withdraw a plea before sentencing, it remains clear that a defendant has no absolute right to withdraw a guilty plea before sentencing. Moreover, a trial court's decision on a motion under Rule 32(d) of the West Virginia Rules of Criminal Procedure will be disturbed only if the court has abused its discretion.

Syl. Pt. 2, *Duncil v. Kaufman*, 183 W. Va. 175, 394 S.E.2d 870 (1990). Here, the trial court addressed the pro se letter at the sentencing hearing and provided copies of the same to trial counsel who both claimed to have no knowledge of it. The trial court concluded that the pro se letter was not a motion to withdraw the guilty plea, that petitioner's attorneys should have filed such a motion, and that the prior guilty plea was made knowingly and voluntarily.

In denying the petition for habeas relief, the habeas court found "that [petitioner's] letter does not constitute a motion to withdraw plea, and even if considered such, makes no claim of actual legal innocence, nor give[s] any fair and just reason why the plea should be withdrawn." We agree. On appeal, petitioner concedes that he "did not file a formal motion to withdraw his guilty plea," yet he argues that the trial court made a procedural error by not considering an unfiled motion. As no motion was filed, we find that no hearing was warranted. Furthermore, although petitioner's letter claimed that he did not commit murder, petitioner never denied his involvement with the murder or the robbery as admitted to at his plea hearing. In fact, at the omnibus hearing, petitioner admitted to bragging to a jail guard that he stabbed the victim several times. The habeas court disagreed with petitioner's characterization that he had consistently maintained "actual innocence" as petitioner "ha[d] admitted in various statements in the underlying criminal case that he himself stabbed the victim . . . and that he kicked and punched the victim while the other [co-

5

defendant] was stabbing and choking [the victim]." We agree with the habeas court's assessment. Accordingly, we find no merit to this assignment of error.

Next, petitioner argues that trial counsel were ineffective. With regard to this claim, we have held:

> 3.      "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syllabus point 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

> . . . .

> 6.      In cases involving a criminal conviction based upon a guilty plea, the prejudice requirement of the two-part test established by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), demands that a habeas petitioner show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Syl. Pts. 3 and 6, *State ex rel. Vernatter v. Warden, W. Va. Penitentiary*, 207 W. Va. 11, 528 S.E.2d 207 (1999). "Failure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim." *Id.* at 17, 528 S.E.2d at 213 (quoting *State ex rel. Daniel v. Legursky,* 195 W. Va. 314, 321, 465 S.E.2d 416, 423 (1995)). Importantly, hindsight is not to be applied to the objective standard:

> "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." Syl. Pt. 6, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

Syl. Pt. 3, *Raines v. Ballard*, 236 W. Va. 588, 782 S.E.2d 775 (2016). Further,

> [w]here a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused.

Syl. Pt. 21, *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974).

6

First, petitioner argues that he "received ineffective assistance of counsel at the pre-trial stages of the proceedings resulting in the unknowing and unintelligent plea of guilty to the first-[d]egree [m]urder."[3] On appeal, petitioner alleges that trial counsel placed "undue pressure" upon him to accept the plea agreement, and that they "did not offer [him] an option of exercising his right to a jury trial." At the omnibus hearing, petitioner testified that he "had no choice" but to enter the plea if he ever "wanted to go home again." Indeed, in light of the overwhelming evidence against petitioner, trial counsel recommended against trial and candidly advised petitioner that his chances of a lighter prison sentence were more likely with the offered plea agreement.

During his plea colloquy, when asked whether anyone had threatened, intimidated, coerced, or pressured him into taking the guilty plea, petitioner answered "[n]o, sir." At the omnibus hearing, trial counsel testified that they had explained to petitioner that they were prepared for trial, but had advised petitioner of the risks of going to trial. Both of petitioner's trial counsel denied coercing or pressuring him to enter his guilty plea. Petitioner's self-serving allegation that trial counsel "did not offer [him] an option of exercising his right to a jury trial" is simply not supported by the record, which contains numerous instances throughout the plea colloquy wherein petitioner was alerted of his trial rights. Accordingly, we find that petitioner has not shown a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial" pursuant to *Vernatter*, and, therefore, he is entitled to no relief on this claim of ineffective assistance of counsel.

Next, petitioner argues that his attorneys were ineffective because they failed to investigate statements made by fellow inmates that were potentially exculpatory. On appeal, petitioner

---

[3]Petitioner inserts a challenge to the voluntariness of his guilty plea within his assignment of error of ineffective assistance of counsel. He argues that his guilty plea was involuntary because he was suffering from "the effects of his drug addiction at the time of the entry of the guilty plea." In support of this contention, petitioner relies on the "Attorney's Statement in Support of Plea of Guilty" as executed by one of his attorneys, Mr. Hively. On the statement, Mr. Hively answered "yes" to the question of whether petitioner was "under the influence of drugs or stimulants" at the time of the entry of his guilty plea. However, Mr. Hively and petitioner's other trial counsel, Mr. Bailey, both testified at the omnibus hearing that petitioner was sober and fully understood the plea proceedings. Furthermore, petitioner answered that he was "not under the influence of any drugs or alcohol" at the plea hearing and his own statement in support of his guilty plea answered "no" to the same question. Notably, petitioner failed to cross-examine Mr. Hively regarding the inconsistency at the omnibus hearing.

Furthermore, during petitioner's plea colloquy, trial counsel answered that petitioner had "been oriented as to time and place" throughout the pretrial process and petitioner answered "yes, sir" when questioned whether he had "freely and voluntarily tendered" both his oral and written guilty pleas. In denying the petition, the habeas court found that petitioner displayed orientation, that no one, including the trial court, observed "any impairment of petitioner at the time of the plea," and that petitioner's responses were rational. Notwithstanding petitioner's reliance on Mr. Hively's inconsistent answer, the overwhelming evidence supports the finding that petitioner was sober when he entered his guilty plea, and that his guilty plea was voluntary. In so far as petitioner argues that his drug addiction made his guilty plea involuntary, we find no merit to this argument.

7

specifically argues that "[n]o private investigator ever reviewed or participated in the case" and that "no witnesses were interviewed." However, the record indicates that trial counsel took the letters from the inmates regarding petitioner's co-defendant's statements and turned them over in discovery to the State as they prepared for trial. The record also shows that trial counsel contacted those inmates' counsel for permission to discuss petitioner's case and retained Herbert Gardner with Mobile Support Investigations, who interviewed the inmates. The investigator reported to trial counsel that the information from the inmates was unreliable or unhelpful to petitioner's defense, and, therefore, trial counsel did not further pursue using the statements in petitioner's defense. At the omnibus hearing, trial counsel testified that nothing came of the letters because their sources were unreliable and the statements were inconsistent with trial counsel's theory of defense. Indeed, petitioner acknowledged at his omnibus hearing that his trial counsel had investigated the three inmates' statements, and that counsel told him that these potential witnesses "would not be believed because they're in jail and because of their track record[s]."

Although petitioner presented the testimony of one inmate, Jason Holstein, at the omnibus hearing to corroborate the claims made in the letters (that petitioner was forced to participate in the murder), trial counsel testified that petitioner never claimed that he was forced to participate, and, therefore, they did not pursue that defense. In denying the petition for habeas relief, the habeas court found that Mr. Holstein's testimony was not "believable" or "exculpatory" in nature "even if believed." The habeas court further found that petitioner failed to demonstrate that trial counsel's performance was objectively deficient or that any of their actions or inactions prejudiced petitioner. We agree. As trial counsel fully investigated the letters as they related to petitioner's possible defense, and reasonably did not rely upon them, we find no merit to this assignment of error.

Petitioner next argues that trial counsel failed to develop trial strategies for possible defenses, including actual innocence. On appeal, petitioner claims innocence, but never denies his involvement with the crimes. At the omnibus hearing, trial counsel testified that they discussed trial strategies with petitioner, but explained that those strategies would be unsuccessful, as all scenarios placed petitioner at the crime scene and exposed him to conviction under multiple theories including felony murder, principal in the first degree, or aiding and abetting the principal in the first degree. Under all of these theories, petitioner would have been exposed to a life sentence, if convicted. In denying the petition, the habeas court found that "[t]he evidence was overwhelming that petitioner was either a principal in the first degree, an aider or abettor, or guilty of felony murder." Based on the evidence, we agree. Therefore, as trial counsel reasonably and fully developed trial strategies, and discussed those strategies with petitioner, we find no merit to this assignment of error.

Next, petitioner argues that trial counsel failed to acquire independent testing of physical evidence. Specifically, he argues that "[n]o independent testing was undertaken, most obviously [of] the petitioner's relatively clean clothing and shoes to negate the presence of any organic substance, apparently abundant at the scene of the crime." However, petitioner fails to clearly state what he wanted trial counsel to accomplish regarding the independent testing. Rather than argue that the testing that was performed was inaccurate or that other testing should have been performed, petitioner appears to argue that he would have been covered in more of the victim's blood if he had committed the murder. In denying the petition for habeas relief, the habeas court noted the

overwhelming amount of physical evidence resulting from the murder, including petitioner's bloody shoe print found near the victim's body; his bloody fingerprint found leading upstairs in the victim's apartment; his bloody clothing; and, most notably, the victim's DNA found underneath petitioner's fingernails. The habeas court found that petitioner failed to "reveal any results which would have affected" the outcome of the proceeding. We agree. Petitioner's reasoning in no way exculpates him, as the victim's blood was found on his "relatively clean" clothing, and petitioner failed to show that trial counsel should have acted differently. As such, we find no merit to this assignment of error.

Additionally, petitioner argues that trial counsel failed to recommend a more satisfactory plea agreement because the "plea offer did not guarantee the [p]etitioner any limitations upon the possible exposure to life in prison without parole." However, petitioner concedes that in return for his guilty plea, the State dismissed his charge for first-degree robbery and stood silent at sentencing. At the omnibus hearing, trial counsel testified that the

> brutal nature of this murder as well as the . . . evidence that they went and ate a BLT directly afterwards, that they were found on the bus trying to sell the victim's pills afterwards . . . that would have been used by the State to say that they were some type of heartless killers. And I think that after [the jury] would have listened to all of this—the amount of stabbings on this guy, how he eventually did expire— that if he was convicted by a jury, he would stand at that point very little chance of getting mercy by that same jury.

Further, trial counsel testified at the omnibus hearing that they both believed the petitioner's guilty plea was in his best interest because if petitioner had been convicted of first-degree murder, it was likely that the jury would withhold mercy, and the first-degree robbery conviction exposed petitioner to an unlimited number of years of incarceration. Trial counsel agreed that due to petitioner's age and the brutality of the crime, petitioner had a better chance of receiving mercy from the trial court than a jury. Indeed, at sentencing, the trial court noted petitioner's young age and ability to be reformed when he granted petitioner mercy, which gave petitioner parole eligibility after fifteen years of incarceration. In denying the petition for habeas relief, the habeas court found "[i]t was not objectively deficient performance to advise the client to accept the plea offer." We agree. Accordingly, we find no merit to this assignment of error.

Petitioner next argues that trial counsel failed to investigate the defense of diminished capacity based upon petitioner's drug and alcohol abuse. At the omnibus hearing, trial counsel testified that if they had gone to trial, they would have addressed petitioner's alcohol and drug abuse on the date of the murder. Indeed, in preparation for a possible trial, trial counsel submitted "Defendant's Jury Instruction No. 27 Diminished Capacity" to the trial court. Trial counsel also testified that they discussed the theory of diminished capacity with petitioner but his admission to voluntary intoxication would have been problematic at trial. Regarding the defense of voluntary intoxication,

> [o]ur Court has consistently stated that a defendant must show that he was "so drunk," "too drunk," or "grossly intoxicated," to negate the deliberation and premeditation elements of first degree murder. A reading of our relevant case law

9

indicates that for a defendant to rely on this defense, he must show that his level of intoxication was gross or extreme.

*State v. Skidmore*, 228 W. Va. 166, 172, 718 S.E.2d 516, 522 (2011). There is no evidence that petitioner made a claim of "gross or extreme" intoxication the night of the murder or asked his trial counsel to pursue this defense at trial. Further, petitioner speculates that a defense of diminished capacity could have "mitigated the first degree murder to one of second degree," yet he fails to address his exposure to conviction of felony murder, which does not require the element of intent. *See* syl. pt. 7, *State v. Sims*, 162 W. Va. 212, 248 S.E.2d 834 (1978) ("The crime of felony-murder in this State does not require proof of the elements of malice, premeditation or specific intent to kill. It is deemed sufficient if the homicide occurs accidentally during the commission of, or the attempt to commit, one of the enumerated felonies.").

Also, petitioner was found mentally competent to stand trial as well as criminally responsible. Petitioner's psychological and psychiatric evaluation concluded that he suffered from no mental disease or defect that would have contributed to a diminished capacity defense. In denying the petition for habeas relief, the habeas court found that petitioner put forward no evidence that the defense of diminished capacity was applicable to his case. We agree. Accordingly, we find that petitioner has not satisfied either prong of the *Strickland/Miller* test, and, therefore, is entitled to no relief on this claim of ineffective assistance of counsel.

Petitioner's last assignment of error alleges that his indictment for first-degree robbery was fatally defective as it failed to charge an essential element, animus furani. We have held that

> "[a]n indictment is sufficient . . . if it (1) states the elements of the offense charged; (2) puts a defendant on fair notice of the charge against which he or she must defend; and (3) enables a defendant to assert an acquittal or conviction in order to prevent being placed twice in jeopardy." Syl. Pt. 6, *State v. Wallace,* 205 W.Va. 155, 517 S.E.2d 20 (1999).

Syl. Pt. 6, in part, *State ex rel. Shepard v. Holland*, 219 W. Va. 310, 633 S.E.2d 255 (2006). The Court recently addressed identical charging language in an indictment and found it sufficient to put the defendant on notice of what crime was committed under West Virginia law.

> "Animus furandi, or the intent to steal or to feloniously deprive the owner permanently of his property, is an essential element in the crime of robbery." Syl. Pt. 2, *State v. Hudson*, 157 W.Va. 939, 206 S.E.2d 415 (1974). Count two alleges that petitioner feloniously committed violence on the victim's person and "then and there feloniously and violently did steal, take[,] and carry away" specified items of his property. Therefore, we conclude that count two of the indictment met minimal constitutional standards and charged an offense under West Virginia law.

*Lind v. Ballard*, No. 16-1033, 2017 WL 4570572, at *6 (W. Va. Oct. 13, 2017)(memorandum decision). Here, petitioner's indictment read, in relevant part,

the Grand Jurors . . . further present that MICHAEL THOMPSON . . . on the ____ day of November 2009, and prior to the date of the finding of this Indictment . . . did unlawfully and feloniously commit violence, by striking and beating, and did unlawfully and feloniously use the threat of deadly force, upon the person of James Andrew Gillespie, and . . . [to deprive] of the money, property, goods, effects and chattels of the said James Andrew Gillespie, and lawfully in his control and custody and against his will, then and there [petitioner] feloniously and violently did steal, take and carry away, in violation of Chapter 61, Article 2, Section 12(a), West Virginia Code 1931, as amended, against the peace and dignity of the State.

As this Court has already found the language used in petitioner's indictment for first-degree robbery to be sufficient, we find that petitioner is entitled to no relief on his claim of a defective indictment.

For the foregoing reasons, the circuit court's April 4, 2018, order denying petitioner habeas relief is hereby affirmed.

Affirmed.

**ISSUED:** November 8, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

11