STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**
**April 26, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia ex rel. Alexander Calvin Bosley,**
**Petitioner Below, Petitioner**

**vs.)  No. 19-0793** (Harrison County 16-C-314-3)

**J.D. Sallaz, Superintendent,**
**Lakin Correctional Center,**
**Respondent below, Respondent**

## MEMORANDUM DECISION

Petitioner Alexander Calvin Bosley, by counsel David Mirhoseini, appeals the January 15, 2019, order of the Circuit Court of Harrison County that denied his petition for post-conviction habeas corpus relief. J.D. Sallaz, Superintendent, Lakin Correctional Center, by counsel Elizabeth Grant, responds in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2010, a grand jury returned a two-count indictment against petitioner charging him with felony murder and conspiracy to commit burglary. The indictment alleged that on October 25, 2009, petitioner conspired with others to burglarize the home of Terry K. Lewis and that, during the commission of the burglary, Mr. Lewis was killed by one of petitioner's co-conspirators.

Petitioner claims that his medical records from his pretrial incarceration, show the following: (1) he has a history of six concussions and sexual abuse; (2) he is on multiple medications and has been placed on a suicide watch; (3) he was born with an XYX chromosomal pattern due to fetal alcohol syndrome; (4) he uses multiple mental health medications; (5) he has blackouts; (6) while he was in prison, he was found writing in his own blood; (7) he reported wanting to hurt himself because it was "the only way to get this different personality to stop"; (8) he claimed to be different people with varying ages and differing personalities; (9) he is tearful, weepy, unable to care for himself, and has threatened to hurt himself; (10) he has thoughts of suicide and has attempted suicide; (11) he has been diagnosed with "schizophrenia, MI, DM, personality disorder, depression, and HTN"; and (12) he has panic attacks.

1

Petitioner's counsel moved for a mental health examination to "determine petitioner's competency at the time of his alleged crimes, whether he was competent to stand trial, and whether the regional jail could adequately care for petitioner." Thereafter, the trial court granted petitioner's motion for a psychiatric evaluation, which was conducted by psychiatrist Ralph Smith Jr., M.D. During the evaluation, petitioner gave a full account of the burglary and murder. Dr. Smith also spoke with jail personnel and reviewed petitioner's medical records from the regional jail. In his report, Dr. Smith found that petitioner's "claims of having multiple personalities and blackouts causing significant functional impairment [were] not credible, when analyzed in context of his exaggeration of problems on the Personality Assessment Inventory and the observations of staff about his behavior." Dr. Smith concluded that petitioner was competent to stand trial. Dr. Smith did not determine whether petitioner was competent at the time his crimes were committed. Based upon Dr. Smith's findings and conclusions, the trial court found that petitioner was competent to stand trial.

Thereafter, the parties entered into a plea agreement whereby petitioner agreed to plead guilty to felony murder and to testify against his co-conspirators. In return, the State agreed it would dismiss the conspiracy to commit burglary charge and join petitioner in recommending that he be sentenced to life in prison but be eligible for parole in fifteen years.

At a July 7, 2010, plea hearing, the circuit court inquired about petitioner's mental health. The record showed that petitioner was involuntarily committed at the age of fifteen and received treatment for self-mutilation and a personality disorder. Thereafter, petitioner was placed on medication, released from the commitment, and received outpatient psychiatric care "off and on for a couple years." Petitioner testified that his psychiatric medication had no effect on his memory or ability to think. Petitioner then set forth the basis for his plea. He testified that his co-conspirator, Jeff Taylor, "told me he needed some quick money . . . I told him I knew a house, but I didn't want to have anything to do with it." Petitioner admitted that he had a "bad past" with the prospective victim. Petitioner then said that he drove Mr. Taylor and a second co-conspirator to the victim's house, explained the basic layout of the house, and told his co-conspirators to take a jewelry box from the house. The co-conspirators entered the house while petitioner waited in the car. When the co-conspirators returned to the car, petitioner learned that they had stabbed the victim to death during the course of the burglary.[1] Petitioner further testified that he was under the influence of alcohol when the burglary was committed and that he understood the burglary was wrong. The trial court accepted petitioner's plea to one count of felony murder and ordered a presentence investigation and a diagnostic evaluation.

Psychologist Frances Allen-Henderson performed petitioner's diagnostic evaluation and found that, although petitioner reported being diagnosed with Dissociative Personality Disorder, his mental health record, his behavior during the evaluation, and his history of hospitalizations did not support such a finding.

---

[1] Petitioner's co-conspirators also pleaded guilty to felony murder and each was sentenced to life without the possibility of parole.

At petitioner's October 28, 2010, sentencing hearing, the circuit court considered petitioner's "age, lack of parental supervision or help, and history of substance abuse, physical abuse, and sexual abuse." The court ruled that it would

> not make a recommendation that [petitioner] be considered for parole based upon his representation in the presentence investigation report, [his] lack of work history yet [his] ability . . . to go [from] one fix to the next, and the burglary of a home in the nighttime resulting in the stabbing to death of the homeowner in front of his minor grandchild.

Accordingly, the circuit court sentenced petitioner to life in prison without the possibility of parole.

Petitioner did not file a direct appeal. However, on August 10, 2016, he filed a petition for post-conviction habeas corpus relief on his own behalf. The habeas court appointed counsel who filed an amended habeas petition raising the following grounds for relief: (1) involuntary guilty plea; (2) mental incompetency at the time of the crime; (3) failure of counsel to take an appeal; (4) unfulfilled plea bargain; (5) ineffective assistance of counsel; (6) prejudicial joinder of defendants; (7) a longer sentence than expected; (8) excessive sentence; and (9) mistaken advice of counsel as to parole or probation eligibility. However, on appeal, petitioner raises only two grounds for relief: (1) involuntary plea, and (5) ineffective assistance of counsel for failing to investigate or pursue an insanity defense.

At petitioner's March 23, 2017, omnibus evidentiary hearing, he testified as follows: Attorney Perry Jones was his main point of contact. He asked Mr. Jones to speak with his mental health counselor, but he did not believe counsel did so. He testified that when he was arrested, he was not under any psychiatric distress and acknowledged that, before he entered his guilty pleas, he underwent a psychiatric evaluation. He claimed that when he was nineteen, he became aware that he had multiple personalities, and – at the time of the murder – had "night rages" and "night terrors." He said that when he got "stressed out, [he] would blackout and not know what [he] did until [he] woke up and [he] thought [he] was going to sleep." Petitioner's habeas counsel introduced petitioner's psychiatric examination and petitioner's medical records from the regional jail. Petitioner then testified that his trial counsel never discussed an insanity plea with him; that he was not able to control his conduct at the time of the crime; and that if he had known about an insanity defense, he would have insisted on raising it and would have gone to trial instead of entering a guilty plea. Finally, Mr. Jones highlighted that, on January 31, 2010, petitioner told a nurse that his name was "Chris," which is not petitioner's name. On cross-examination, petitioner testified that he understood his conduct at the time of the murder was wrong and admitted that less than a month after the murder he gave a detailed statement to the police about the murder in the presence of counsel.

In its January 15, 2019, order denying habeas relief, the circuit court found that there was no evidence that petitioner received ineffective assistance of counsel, that he was mentally incompetent or insane at the time of his crime, or that his guilty plea was involuntary.

Petitioner now appeals.

In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006). "On an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. Pt. 2, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973).

Petitioner first argues that the circuit court erred in failing to find that he was denied his constitutional right to the effective assistance of counsel in his underlying felony case. The Sixth Amendment of the United States Constitution and Article III, § 14 of the West Virginia Constitution requires that a criminal defendant receive competent and effective assistance of counsel. *State ex rel. Strogen v. Trent*, 196 W. Va. 148, 152, 469 S.E.2d 7, 11 (1996). However, we had said that

the cases in which a defendant may prevail on the ground of ineffective assistance of counsel are few and far between one another. This result is no accident, but instead flows from deliberate policy decisions this Court and the United States Supreme Court have made mandating that "[j]udicial scrutiny of counsel's performance must be highly deferential" and prohibiting "[i]ntensive scrutiny of counsel and rigid requirements for acceptable assistance[.]" *Strickland* [*v. Washington*], 466 U.S. [668,] 689–90, 104 S.Ct. [2052,] 2065–66, 80 L.Ed.2d [674,] 694–95 [(1984)]. In other words, we always should presume strongly that counsel's performance was reasonable and adequate. A defendant seeking to rebut this strong presumption of effectiveness bears a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a "wide range." The test of ineffectiveness has little or nothing to do with what the *best* lawyers would have done. Nor is the test even what most good lawyers would have done. We only ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at the time, in fact, worked adequately.

*State v. Miller*, 194 W. Va. 3, 16, 459 S.E.2d 114, 127 (1995).

"In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-prong test established in *Strickland . . .* : (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syllabus point 5, *State v. Miller*[.]

Syl. Pt. 3, *State ex rel. Vernatter v. Warden, W. Virginia Penitentiary*, 207 W. Va. 11, 528 S.E.2d 207 (1999).

> In reviewing [*Strickland's* first prong,] counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

*Miller*, 194 W. Va. at 6-7, 459 S.E.2d at 117-18, syl. pt. 6. In reviewing the second or prejudice prong, the court looks at whether "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.' Syllabus point 5, . . . *Miller*[.]" *Vernatter*, 207 W. Va. at 13, 528 S.E.2d at 209, syl. pt. 3, in part. Finally, "[i]n cases involving a criminal conviction based upon a guilty plea, the prejudice requirement of the two-part test established by *Strickland* . . . and . . . *Miller* . . . demands that a habeas petitioner show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 14, 528 S.E.2d at 210.

> Regarding an insanity defense,

> [c]ounsel are under an obligation to undertake reasonable pre-trial investigation of possible mental defenses where there are indications that a defendant suffers from a significant mental defect. *See United States v. Kauffman*, 109 F.3d 186, 190 (3rd Cir.1997) (finding ineffective assistance of counsel where counsel was in possession of evidence indicating that defendant was psychotic at time of offense, but did not conduct further investigation); *Becton v. Barnett*, 920 F.2d 1190, 1191–92 (4th Cir.1990) ("[A] lawyer is not entitled to rely on his own belief about a defendant's mental condition, but instead must make a reasonable investigation.").

*Vernatter*, 207 W. Va. at 18, 528 S.E.2d at 214.

Petitioner asserts that his trial counsel had clear indications that petitioner was suffering from a mental disease or defect that rendered him unable to conform his conduct to the requirements of the law. Thus, petitioner argues that his trial counsel had a duty to (1) conduct a reasonable investigation into any mental health defenses, (2) advise petitioner of a possible insanity defense before allowing him to plead guilty to a crime, and (3) have petitioner evaluated for criminal responsibility/insanity. Accordingly, petitioner claims that his trial counsel's performance was objectively unreasonable under *Miller*, *Strickland*, and *Vernatter*. Petitioner also argues that he satisfied *Miller's* second prong, that there was a reasonable probability he would have insisted on going to trial if his trial counsel's assistance had been effective.

We disagree. Petitioner cannot satisfy the first *Strickland* prong, that his counsel's performance was deficient under an objective standard of reasonableness, because his trial counsel moved for a competency evaluation for petitioner, and the resulting evaluation revealed that

5

petitioner was, in fact, competent to stand trial. Although the evaluation did not address petitioner's competence at the time of his crime, the trial court found that the evaluators addressed petitioner's "allegations of blackouts and multiple personality disorder and did not find his allegations to be credible." Coupling trial counsel's request for an evaluation with the general presumption that, in criminal cases, the defendant was sane at the time of the crime, we do not find that petitioner's trial counsel's investigation regarding petitioner's sanity was deficient under an objective standard of reasonableness.

Petitioner also fails to satisfy the second *Strickland* prong, that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." There is no evidence that petitioner lacked legal competency at the time of his crime other than his own self-serving claims. Indeed, two court-ordered evaluations found no basis for petitioner's self-diagnosed claim of Dissociative Personality Disorder. Further, although petitioner claims he blacked out on the night of the crime, he confessed to burglary and felony murder, over time, to the police, to a third-party, to Psychiatrist Smith, and to the circuit court at his plea hearing. Accordingly, because petitioner fails to satisfy either *Strickland* prong, we find that the circuit court did not err in denying petitioner's claim of ineffective assistance of counsel.

In his second and final assignment of error, petitioner argues that the circuit court erred in finding that his guilty plea to felony murder was voluntary and knowing. Petitioner highlights that,

> A guilty plea is valid only if it represents a knowing and voluntary choice among alternatives; therefore, a client's expressed intent to plead guilty does not relieve counsel of their duty to investigate possible defenses and advise the defendant so he can make an informed decision. *See Savino v. Murray*, 82 F.3d 593, 599 (4th Cir.1996); *State ex rel. Vernatter v. Warden*, 207 W.Va. 11, 528 S.E.2d 207 (1999).

*Kevin E.E. v. Seifert*, No. 12-1285, 2013 WL 5476412, at *5 (W. Va., Oct. 1, 2013).

We find no error. The circuit court did not err in finding that petitioner's guilty plea was entered knowingly and voluntarily. Petitioner does not claim that the trial court's plea colloquy was deficient under *Call v. McKenzie*, 159 W. Va. 191, 220 S.E.2d 665 (1975). Instead, he argues that because his trial counsel "never discussed or advised [him] about a legitimate insanity defense before [he] pleaded guilty," his pleas were not entered knowingly. This argument fails because petitioner's trial counsel made a reasonable investigation into petitioner's competence and criminal responsibility by seeking an evaluation under West Virginia Code § 27-6A-1. Further, at petitioner's plea hearing, petitioner laid out a factual basis for his plea and recounted the details of the burglary and murder. Specifically, petitioner admitted that he targeted the victim, described the layout of the victim's house to his co-conspirators, and told them to steal a particular jewelry box. Petitioner also acknowledged that this conduct was wrong. Thus, the circuit court's finding that petitioner "entered his plea knowingly, intelligently, and voluntarily" is supported by the record on appeal.

Accordingly, for the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 26, 2021


**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton